**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

IN RE: COVID-19 GAP LEASE
PAYMENT LITIGATION

MDL NO. 2960

Master Docket No.
1:20-cv-04541-LTS-KHP (S.D.N.Y.)

_____

**MEMORANDUM OF DEFENDANT PONTE GADEA NEW YORK, LLC IN
<u>OPPOSITION TO PLAINTIFF'S MOTION TO TRANSFER UNDER 28 U.S.C. § 1407</u>**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................ 1

II.   BACKGROUND ................................................................................. 4

III.  LEGAL STANDARD ........................................................................ 5

IV.  DISCUSSION.................................................................................... 6

     A.    Individual Questions of Fact Predominate Over Common Facts (If Any), and Questions of Law Predominate Over Both ........................................................... 6

          1.    The Relevant Questions of Fact are Uncommon, Individualized, or Admitted ................................................................................. 7

          2.    The Rent Disputes' limited factual issues are neither novel nor complex ................................................................................... 11

          3.    The procedural history to date demonstrates transfer is unnecessary ....... 12

          4.    Legal Issues Predominate Over Factual Issues ........................................ 14

          5.    Transfer is Especially Unsuitable when the Legal Issues are Governed by Different State's laws ..................................................... 16

     B.    Centralization Would Also Be Inconvenient, Inefficient, and Unjust ................. 17

     C.    Transfer to the N. D. of California Undermines the Goals of 28 U.S.C. § 1407 .. 20

V.    CONCLUSION .................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*48th Americas LLC v. The Gap, Inc.*,
  20-cv-3471 (S.D.N.Y.)....................................................................................13

*Anschutz Corp. v. Merrill Lynch & Co.*,
  690 F.3d 98 (2d Cir. 2012)............................................................................19

*Banana Republic, LLC v. RCPI Landmark Props., LLC*,
  Index No. 653475/2020 (Sup. Ct. New York Cty) ...............................................8, 13

*Bank of Am. Nat. Tr. & Sav. Ass'n v. Envases Venezolanos, S.A.*,
  740 F. Supp. 260 (S.D.N.Y. 1990) ..................................................................15

*Culver & Theisen, Inc. v. Starr Realty Company (NE) LLC*,
  307 A.D.2d 910 (2d Dep't 1994) ....................................................................15

*Erie Railroad v. Tompkins*,
  304 U.S. 64 (1938)........................................................................................19

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
  12 N.Y.3d 132 (2009) ...................................................................................15

*In re Abbott Labs., Inc., Similac Prods. Liab. Litig.*,
  763 F. Supp. 2d 1376 (J.P.M.L. 2011)............................................................6, 7

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
  710 F. Supp. 2d 1378 (J.P.M.L. 2010)................................................................2

*In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*,
  804 F. Supp. 2d 1376 (J.P.M.L. 2011)............................................................5, 6

*In re Cessna Aircraft Distrib. Antitrust Litig.*,
  460 F. Supp. 159 (J.P.M.L. 1978)...................................................................17

*In re Concrete Pipe*,
  302 F. Supp. 244 (J.P.M.L 1969)..................................................................6, 19

*In re COVID-19 Bus. Interruption Protection Ins. Litig.*,
  MDL. No. 2942, 2020 WL 4670700 (J.P.M.L. Aug. 12, 2020) ...........................10

*In re Eli Lilly and Co. (Cephalexin Monohydrate) Patent Litig.*,
  446 F. Supp. 242 (J.P.M.L. 1978)................................................................5, 18

*In re Falstaff Brewing Corp. Antitrust Litig.*,
  434 F. Supp. 1225 (J.P.M.L 1977)....................................................................6

*In re Garrison Diversion Unit Litig.*,
    458 F. Supp. 223 (J.P.M.L. 1978)....................................................................6

*In re: Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*,
    899 F. Supp. 2d 1378 (J.P.M.L. 2012)............................................................18

*In re HealthExtras Ins. Mktg. & Sales Practice Litig.*,
    24 F. Supp. 3d 1376 (J.P.M.L. 2014)..............................................................16

*In re: Hercules Offshore, Sec. and Derivative Litig.*,
    816 F Supp 2d 1377 (J.P.M.L. 2011)..............................................................12

*In re Hitz Rest. Group*,
    616 B.R. 374 (Bankr. N.D. Ill. 2020) .............................................................14

*In re JumpSport, Inc. ('845 & '207) Patent Litig.*,
    338 F. Supp. 3d 1356 (J.P.M.L. 2018)............................................................12

*In re Live Face on Web, LLC, Copyright Litig.*,
    148 F Supp 3d 1373 (J.P.M.L. 2015)..............................................................13

*In re Medi-Cal Reimbursement Rate Reduction Litig.*,
    652 F. Supp. 2d 1378 (J.P.M.L 2009)...............................................................6

*In re Mtge. Indus. Foreclosure Litig.*,
    996 F. Supp. 2d 1379 (J.P.M.L. 2014).........................................................9, 15

*In re: Nat'l Ass'n for Advancement of Multijurisdiction Practice Litig.*,
    52 F. Supp. 3d 1377 (J.P.M.L. 2014)..............................................................16

*In re Nat'l Credit Union Admin. Bd. Mortgage-Backed Sec. Litig.*,
    996 F. Supp. 2d 1374 (J.P.M.L. 2014)..............................................................6

*In re Proton-Pump Inhibitor Prods. Liab. Litig.*,
    273 F. Supp. 3d 1360 (J.P.M.L. 2017)............................................................18

*In Re Swine Flu Immunization Prods. Liab. Litig.*,
    464 F. Supp. 949 (J.P.M.L. 1979).....................................................................7

*In re Table Saw Prods. Liab. Litig.*,
    641 F. Supp. 2d 1384 (J.P.M.L. 2009)............................................................10

*In re Wells Fargo Paycheck Protection Program Litig.*,
    Case MDL No. 2954, 2020 WL 4673472 (J.P.M.L. Aug. 5, 2020) .......................10

*In re Westinghouse Elec. Corp. Uranium Contracts Litig.*,
    405 F Supp 316 (J.P.M.L. 1975).....................................................................11

*Jones v. Evans*,
      52 Misc. 3d 1225(A) (N.Y. Sup. Ct. Kings Cty. 2016) ..........................................................15

*Julien J. Studley, Inc., v. New York News, Inc., et al.*,
      70 N.Y.2d 628 (1987) ........................................................................................................15

*Matter of Westinghouse Elec. Corp. Uranium Contracts Litig.*,
      517 F Supp 440 (E.D. Va. 1981) ...................................................................................10, 11

*One World Trade Ctr. LLC v. Cantor Fitzgerald Sec.*,
      6 Misc. 3d 382 (Sup. Ct. New York Cty. 2004) ................................................................11

*Palm Springs Mile Associates, LTD. v. Old Navy, LLC.*,
      20-cv-21929-Scola (S.D.Fla.) .....................................................................................3, 5, 13

*Reade v. Stoneybrook Realty, LLC*,
      63 A.D.3d 433 (1st Dep't 2009) ........................................................................................11

*Route 6 Outparcels v. Ruby Tuesday*,
      88 A.D.3d 1224 (3d Dep't 2011) .......................................................................................14

*Sage Realty Corp. v. Jugobanka, D.D.*,
      No. 95 CIV. 0323 RJW, 1998 WL 702272 (S.D.N.Y. Oct. 8, 1998) ....................................15

*South Bay United Pentecostal Church v. Newsom*,
      140 S.Ct. 1613 (2020) .........................................................................................................9

*The Gap, Inc., et al. v. 44-45 Broadway Leasing Co., LLC*,
      Index No. 652549/2020 (Sup Ct New York Cty July 22, 2020) ........................................8, 13

*The Gap, Inc. v. Ponte Gadea New York LLC*,
      No. 1:20-cv-04541-LTS-KHP (S.D.N.Y.) .................................................................... passim

*Trinity Ctr. v. Wall St. Correspondents*,
      798 N.Y.S.2d 348, 4 Misc. 3d 1026(A), (Sup. Ct. New York Cty. 2004) ..............................12

*Urban Archaeology Ltd v 207 E. 57th St. LLC*,
      68 A.D.3d 562, 562 (1st Dep't 2009) .................................................................................12

*Van Dusen v. Barrack*,
      376 U.S. 612 (1964) ...........................................................................................................19

## Statutes

28 U.S.C. § 1407 .................................................................................................................. passim

28 U.S.C. § 1407(a) ................................................................................................................2, 5

**Rules**

Fed. R. Civ. P. Rule 12(c) ................................................................................................3

Fed. R. Civ. P. Rule 26 ..................................................................................................17

**Other Authorities**

https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html ...............................8

https://www.sfchronicle.com/business/amp/Gap-s-future-lies-with-Bankruptcy-Court-7943518.php ...................................................................................................................19

https://www.natlawreview.com/article/20-retailers-to-watch-bankruptcy-filing-second-half-2020 ...............................................................................................................19

Ronald J. Bacigal, *An Empirical Case Study of Informal Alternative Dispute Resolution*, 4 Ohio St J on Disp Resol 1, 4-25 (1988) ....................................................................................11, 12

Ponte Gadea New York, LLC ("Ponte Gadea"), by and through undersigned counsel, respectfully files this Response in Opposition to the Motion to Transfer Under 28 U.S.C. § 1407 ("Transfer Motion") filed by The Gap, Inc. ("Gap") and its various wholly owned subsidiaries.[1]

## I.    INTRODUCTION

In April 2020, in response to the COVID-19 pandemic, Gap made the corporate decision to stop paying rent at all of its brick and mortar stores nationwide, leaving landlords in the lurch. While small mom and pop stores have struggled to make ends meet to satisfy their contractual obligations to pay rent, Gap decided to leverage its size and pocketbook by commencing (and defending) costly litigation throughout the United States, claiming that it was excused from all rent payments indefinitely. This Transfer Motion is the next step in Gap's nationwide litigation strategy. Gap now seeks to drag all of the landlords from across the country to its home district (where no dispute is pending) and into a wholly unnecessary multidistrict litigation. In doing so, Gap hopes to obtain favorable relief there, while also prejudicing landlords by leaving them hanging in the wind and unable to obtain quick relief in their local district courts that are familiar with their state's real estate laws, all the while Gap continues to use and occupy the retail locations without paying one cent of rent in consideration. This should not be allowed.

The Multidistrict Litigation Judicial Panel ("Panel") should deny Gap's baseless and prejudicial transfer request, and instead should let the landlords separately resolve the (now less than) 33 rent disputes (the "Rent Disputes") where the retail stores are located. This will be the most efficient and just way to resolve these simple disputes. Alternatively, Ponte Gadea requests to have its lawsuit – *The Gap, Inc. v. Ponte Gadea New York LLC*, No. 1:20-cv-04541-LTS-KHP

---

[1] JPML R. 3.2(a) limits briefs to 20 pages, *double spaced*, "[a]bsent exceptional circumstances." Gap's brief is less than double spaced, which is tantamount to having extra pages. Yet, despite granting itself this unauthorized advantage, Gap's request still fails.

(S.D.N.Y.) ("PG Dispute") – severed and remanded to the Southern District of New York[2] for timely resolution of its summary judgment motion, which it filed on August 17, 2020.[3] Contrary to Gap's maneuvering, the district court has already denied Gap's effort to extend its response deadline to *after* resolution of this Transfer Motion[4] (and will likely deny Gap's stay request), making Gap's response to this dispositive motion due on August 31. On the current track, the PG Dispute (as well as others) will likely be resolved soon without transfer (or any need for one).

Here, consolidation for pre-trial purposes will complicate, not simplify, the Rent Disputes. Each dispute involves different facts, leases, governmental orders, local witnesses, and measures of damages. The individual facts predominate over common ones (if any), legal questions predominate over factual ones, discovery (if any) is disparate, and transfer will be inefficient and unjust. Unsurprisingly, as far as Ponte Gadea can confirm, the Panel has ***never*** consolidated a multidistrict litigation to resolve simple rent disputes and surely Gap would have identified such a case if it existed. Because none of the hallmarks for multidistrict litigation consolidation exist here, the Panel should deny Gap's Transfer Motion.

First, relevant common questions of fact between the various disputes, ***if any***, are neither complex nor predominate over individual questions of fact. Moreover, the few common facts that may exist are already admitted (Gap admits it made the business decision to cease paying rent nationwide), are established by judicial notice (dates and specifics contained within COVID-19 executive orders), or are simply irrelevant to the swift adjudication of these matters. Unlike

---

[2] *See* 28 U.S.C. § 1407(a); *see also* JPML R. 10.1(b); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 710 F. Supp. 2d 1378, 1380 (J.P.M.L. 2010) (excluding one action from § 1407 where claims were "distinct enough for exclusion from the centralized proceedings").

[3] Copies of Ponte Gadea's motion for summary judgment, and related filings, are attached to the to the Declaration of Darryl Graham ("Graham Decl.") as **Composite Exhibit 1.**

[4] Copies of the district court's denial of Gap's request for an extension of time, along with the related filings, are attached as **Composite Exhibit 2** to the Graham Decl.

most disputes that are consolidated for MDL, each case here is factually dissimilar to the next. This is not a plane crash that similarly affects families that lost loved ones. This is not a products liability case where the affected plaintiffs will be seeking similar discovery about when the manufacturer knew the product was defective. These are lease disputes, and each is different.

Further, any relevant "facts" necessary to resolve the Rent Disputes are unique to the specific property, specific lease, and the specific lease negotiations between the parties. Thus, relevant discovery, if any, will be localized and burdened by centralization.

Additionally, legal issues predominate over factual ones. These are straightforward lease disputes with most facts already established and ready for resolution. The district courts merely need to interpret the leases under their state's law and decide whether Gap's failure to pay rent is a breach. Early dispositive motions have been (or will be) filed, and *Palm Springs* settled in response to one.[5] Likewise, New York state courts have already entered *Yellowstone* relief in similar disputes requiring Gap to pay rent, and other courts have resolved rent disputes in the COVID-19 context. All of this occurred quickly, and without MDL transfer or discovery, which further demonstrates that the Rent Disputes are neither complex nor complicated.

In light of these facts, centralization for discovery is unnecessary, and will only delay the current trend towards resolution. While Gap self-servingly speculates that landlords will take massive discovery from Gap, the early dispositive motions indicate otherwise. Moreover, in the unlikely event Gap can demonstrate that some minimal discovery is necessary, it will be localized, unique to each dispute, and thus best handled by the local judge, not in a MDL.[6]

Finally, the request for consolidation and transfer would promote forum-shopping, not

---

[5] *Palm Springs Mile Associates, LTD. v. Old Navy, LLC.*, 20-cv-21929-Scola (S.D.Fla.) ("*Palm Springs*") (Old Navy settled in response to landlord's Rule 12(c) motion) (Dkt. No. 27).
[6] For instance, each witness in Ponte Gadea's Initial Disclosures, including Gap's employees, is located in New York City. *See* Graham Decl., **Exhibit 3** (Ponte Gadea's Initial Disclosures).

justice. There is no action pending in the proposed transferee district (Northern District of California), yet Gap obviously prefers to litigate in its home forum and this Transfer Motion is the only mechanism to get there. Similarly, Gap's hope for the transferee court to provide a favorable uniform ruling despite the various leases, their forum selection clauses, and the application of different states' laws, only highlights Gap's ulterior motive for transfer. In short, transfer is unwarranted, improper, and should be denied.

## II.    BACKGROUND[7]

Each of the Rent Disputes is straight-forward, and the PG Dispute is illustrative. Gap is a tenant under a lease for a retail store (the "Lease") located at 734 Lexington Avenue, New York, New York (the "Premises"). Ponte Gadea is the landlord under that Lease. When the COVID-19 pandemic struck and New York State began ordering certain businesses to temporarily close down in March 2020, Gap made a nationwide business decision to stop paying rent at all of its retail stores throughout the United States, including at the Premises. Hence, Gap has not paid rent to Ponte Gadea under the Lease since March 2020 before the COVID-19 pandemic.

After Gap failed to pay rent for April 2020 and May 2020, Ponte Gadea served Gap with a notice of default under the Lease, followed by a notice terminating the Lease effective June 15, 2020, due to Gap's failure to pay rent. Gap, however, refused to pay rent and refused to vacate and surrender the Premises. To date, Gap continues to use and occupy the Premises, including but not limited to, storing its merchandise, advertising its goods, and operating its retail store for at least curbside pickup. Yet, despite this, *Gap sued Ponte Gadea* and claims it is not required to pay rent due to the doctrines of impossibility and frustration of purpose, and related equitable and legal claims that all hinge on those common law doctrines and contractual *force majeure*.

---

[7] Ponte Gadea refers the Panel to its Motion for Summary Judgment for evidentiary support for the facts contained in the Background and for the specific undisputed facts that relate to the Ponte Gadea Lease. *See* Graham Decl., Comp. Ex. 1.

However, the Lease (as well as the other leases) are unambiguous and require Gap to continue paying rent. With respect to Ponte Gadea, Gap owes $5,671,155.80 in unpaid rent with an additional $1,230,216.93 accruing on September 1, 2020 (and each month thereafter).

These issues are legal and the facts are established. The question is, based on the governmental orders and Gap's decision not to pay rent, do those doctrines or the Lease allow Gap to cease paying rent? Claims for breach of contract and declaratory relief will resolve these questions, while Gap's filler equitable claims for unjust enrichment, money had, and rescission will fail as a matter of law due to the existence and terms of the Lease. Gap's "hail-mary" reformation claim, even assuming Gap can make a competent, *prima facie* showing of its mistake (an especially high bar to satisfy), will require individualized discovery from each landlord in each dispute. Unsurprisingly, Gap's claims drew early dispositive motions from Ponte Gadea, as well as others, such as *Palm Springs*.

Confronted with this reality and a likely mountain of adverse judgments, Gap filed this Transfer Motion, which is improper in light of the uncommon facts and largely legal nature of the Rent Disputes. In the PG Dispute in particular, Gap admits that the Lease is "non-standard," thus making it a uniquely poor candidate for centralization. Transfer Memo, p. 8 n. 13.

### III.    LEGAL STANDARD

Transfer is warranted if: (1) the actions share common questions of fact; (2) transfer would be for the convenience of the parties and witnesses; and (3) transfer would advance the just and efficient conduct of the litigation. 28 U.S.C. § 1407(a). Gap has the burden of showing that common questions of fact exist and transfer serves the § 1407(a) objectives. *In re Eli Lilly and Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 243-44 (J.P.M.L. 1978).

Gap also bears the "burden of demonstrating the need for centralization." *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1379 (J.P.M.L. 2011).

"[C]entralization under Section 1407 should be the *last solution* after considered review of all other options." *Id.* at 1378 (emphasis added). This heavy burden further requires a showing that the common factual questions are "sufficiently complex [such] that accompanying discovery will be so time-consuming as to further the purposes of Section 1407." *In re Garrison Diversion Unit Litig.*, 458 F. Supp. 223, 225 (J.P.M.L. 1978). And even if common questions of fact exist, the objectives of convenience, justice and efficiency must be "sufficiently served to justify the necessary inconveniences of transfer and remand." *In re Concrete Pipe*, 302 F. Supp. 244, 254 (J.P.M.L 1969). Thus, the Panel must weigh the interests of *all* parties, *see In re Falstaff Brewing Corp. Antitrust Litig.*, 434 F. Supp. 1225, 1229 (J.P.M.L 1977), and should deny transfer if consolidation does not serve *all* statutory objectives. *Concrete Pipe*, 302 F. Supp. at 255 ("If we are to order transfer, the statute requires us to determine that the answer to that question, including each of its four elements, is in the affirmative.").

## IV.   DISCUSSION

### A.   Individual Questions of Fact Predominate Over Common Facts (If Any), and Questions of Law Predominate Over Both

Denial of a motion for transfer is warranted when "individual facts contained in [the Rent Disputes] will predominate over any alleged common fact questions." *In re Abbott Labs., Inc., Similac Prods. Liab. Litig.*, 763 F. Supp. 2d 1376, 1376 (J.P.M.L. 2011). Similarly, where the issues are primarily legal in nature, even if some fact issues may exist, transfer is inappropriate. *In re Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F. Supp. 2d 1378 (J.P.M.L 2009) (denying transfer where issues were "by and large strictly legal.").

In addition, "common questions of fact among the[] actions [must be] sufficiently complex and/or numerous to justify centralization." *In re Nat'l Credit Union Admin. Bd. Mortgage-Backed Sec. Litig.*, 996 F. Supp. 2d 1374, 1376 (J.P.M.L. 2014). Here, the Transfer

Motion should be denied because, while COVID-19 is a common fact, "individual facts contained in the[ Rent Disputes] predominate over any alleged common fact questions." *Abbott Labs.*, 763 F. Supp. 2d at 1376.

1. <u>*The Relevant Questions of Fact are Uncommon, Individualized, or Admitted*</u>

Gap fails to meet its burden of showing sufficient, common questions of fact exist to justify consolidation and transfer. In fact, Gap's Transfer Motion largely focuses on legal issues, which, generally speaking, are irrelevant to transfer, but as explained below militate against transfer. Instead, Gap's moving papers demonstrate that the purported "common" questions of fact are either admitted or are quite uncommon and individualized.

First, Gap admits that it made the business decision to stop paying rent nationwide. *See* Transfer Motion, ¶ 6; Memo, p. 2. Admitted facts do not need discovery or centralization. *In Re Swine Flu Immunization Prods. Liab. Litig.*, 464 F. Supp. 949 (J.P.M.L. 1979) (admission of liability removes "common" fact question). While Gap wants to make its subjective calculus for "why" it made this decision relevant, it is not. What Gap decided – to stop paying rent – is relevant, and the only remaining question is whether the relevant leases excuse the consequences of Gap's decision. That is a legal question. The relevant facts are admitted or established by governmental order, which renders transfer to coordinate discovery unnecessary. *Id*.

Next, Gap superficially lists certain "share[d] factual questions" that purport to support transfer and consolidation, but upon further consideration they are obviously uncommon and individualized facts that cut against transfer. Specifically, Gap identifies:

> the public safety issues posed by COVID-19 in general and to retail stores, potential means and corresponding costs of addressing those safety issues by the parties, efforts undertaken by the parties to ensure customer safety, the government orders mandating closure, effects of COVID-19 on the public's view of continued shopping in physical, retail stores, and the effect of COVID-19 on retail sales, including for Gap stores that have reopened.

7

Transfer Memo, p. 11.

Yet, in each Rent Dispute, the impact of COVID-19 and the resulting governmental orders were different. While Gap applied a "one-size-fits-all" approach, the facts on the ground were unique to each retail location and thus each dispute's characteristics must be evaluated separately to test Gap's decision. For example, New York City has had more than 225,000 confirmed COVID-19 cases, while the entire State of West Virginia has had less than 9,000.[8] In turn, each jurisdiction had different governmental orders with different durations and restrictions.[9] Because of this, it follows that the COVID-19 related "costs of addressing those safety issues *by the parties*" and the "efforts undertaken *by the parties* to ensure customer safety" are factually different for each Rent Dispute and its specific parties, location, and lease.

Indeed, even for Gap's leases in New York City, a New York State Court judge recently *denied* Gap's attempt to claim a lease dispute at its Times Square location and a lease dispute at its Rockefeller Center location were *related actions*.[10] If these two leases are not related, then there cannot be sufficient factual relationship between the 33 leases, across 10 different states that Gap is attempting to transfer to a MDL.

Further, in those states that required businesses to shut down, there were variations between the orders requiring the examination of individual questions such as (1) was Gap deemed an "essential business" and therefore permitted to keep operating, (2) even if Gap was not designated as "essential," did the state or local jurisdiction permit Gap to stay partially open

---

[8] *See* MDL Dkt. No. 1-2 (disputes filed in New York City (Nos. 17-20) and in West Virginia No. 33). *See also* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

[9] A table collecting orders from certain jurisdictions is attached as **Exhibit 4** to Graham Decl.

[10] *See* Graham Decl., **Composite Exhibit 5** (noting *Banana Republic, LLC v. RCPI Landmark Props., LLC*, Index No. 653475/2020 (Sup. Ct. New York Cty) "is not related to *The Gap, Inc. et al v. 44-45 Broadway Leasing Co., LLC* Index No. 652649/2020 contrary to the entry on the Request for Judicial Intervention" filed by Gap).

(such as for curb-side pick-up), and (3) what date(s) were Gap's various retail locations subject

to a closure order(s) and what did Gap do in response. Also, most states issued multiple orders,[11]

and local health departments often issued a separate order with restrictions. *See e.g.*, Exhibit 4.

As such, to the extent these governmental orders even affect the legal analysis of any particular

lease agreement, each Rent Dispute, including the PG Dispute, requires the resolution of each of

these individual issues before Gap can attempt to pursue its "one-sized-fits-all" theory that the

COVID-19 governmental orders relieved it of its obligation to pay rent.

In fact, as Chief Justice Roberts recently noted, local and state orders governing COVID-

19 closures are individualized and state-focused:

> Our Constitution principally entrusts "[t]he safety and the health of the
> people" to the politically accountable officials of the States "to guard and
> protect." When those officials "undertake[ ] to act in areas fraught with
> medical and scientific uncertainties," their latitude "must be especially
> broad." Where those broad limits are not exceeded, they should not be
> subject to second-guessing by an "unelected federal judiciary," which lacks
> the background, competence, and expertise to assess public health and is not
> accountable to the people. That is especially true where, as here, a party
> seeks emergency relief in an interlocutory posture, while local officials are
> actively shaping their response to changing facts on the ground.

*South Bay United Pentecostal Church v. Newsom*, 140 S.Ct. 1613, 1613-14 (2020) (citations

omitted) (Roberts, C.J., concurring). Thus, while the existence of COVID-19 is factually

common, the extent of its impact is factually uncommon and highly individualized to each retail

store, its relevant government's orders, the parties' reactions, and the relevant lease.

Under similar circumstances, this Panel has denied consolidation. For example, in *In re*

*Mtge. Indus. Foreclosure Litig.*, 996 F. Supp. 2d 1379, 1379 (J.P.M.L. 2014), the Panel

acknowledged a similar theory of contract interpretation, but denied transfer because the cases

---

[11] While others, including Iowa, Nebraska, North Dakota, South Dakota, Utah, Wyoming, and
Arkansas, never issued any stay-at-home orders.

had "different defendants, different plaintiffs, different mortgage loans at different stages of the foreclosure process, different securitized trusts involving different contractual trust arrangements and different trustees and mortgage servicers, different state laws, and different putative classes." *See also In re Table Saw Prods. Liab. Litig.*, 641 F. Supp. 2d 1384, 1384 (J.P.M.L. 2009) (denying motion to transfer 42 cases because "common issues … are overshadowed by non-common ones" and noting that each case "occurred under unnecessarily unique circumstances.").

Likewise, the Panel recently denied two COVID-19 related transfer motions for similar reasons. *See, e.g., In re COVID-19 Bus. Interruption Protection Ins. Litig.*, MDL. No. 2942, 2020 WL 4670700, at *2 (J.P.M.L. Aug. 12, 2020) (denying transfer of "more than 175 actions" because "there is little potential for common discovery across the litigation" and "these cases involve different insurance policies with different coverages, conditions, exclusions, and policy language, purchased by different businesses in different industries located in different states. These differences will overwhelm any common factual questions."); *see also In re Wells Fargo Paycheck Protection Program Litig.*, Case MDL No. 2954, 2020 WL 4673472, at *1 (J.P.M.L. Aug. 5, 2020) (individual factual issues predominate over common factual issues).

Finally, Gap's "best" case and reliance on *Westinghouse* is inapposite. First, had Gap inquired into the fate of Westinghouse, it may have reconsidered this citation as the court actually ruled *against* Westinghouse and rejected its contractual, UCC, and common law defenses. *See Matter of Westinghouse Elec. Corp. Uranium Contracts Litig.*, 517 F Supp 440, 460-61 (E.D. Va. 1981) ("The defense of frustration of purpose, like commercial impracticability and mistake of fact, is limited by the parties' allocation of the risk that the supervening event will occur. Having found overwhelming evidence that Westinghouse assumed the risk of the uncertainties …, the Court cannot find that frustration of purpose excuses its nonperformance."

… "[I]t is clear that, under the law, Westinghouse is liable … for its breach of contract. It must pay damages[.]") (citations omitted). If anything, this decades' old dispute *is* Gap's downfall.

But with respect to consolidation, *Westinghouse* is distinguishable because the "unforeseen" event was a global uranium shortage, which produced a *uniform* and common shortage of uranium across all of Westinghouse's contracts. And it was *this* commonality that tipped the Panel's scale in favor of consolidation. *In re Westinghouse Elec. Corp. Uranium Contracts Litig.*, 405 F Supp 316, 318-19 (J.P.M.L. 1975) (finding the relevant "example" of common fact was the "supply of uranium on the open market and its cost" and Westinghouse's ability to "deliver[ … ]uranium."). Here, however, the impact of COVID-19 is not uniform, but different from city to city, state to state, and retail location to retail location. With this crucial common fact missing, *Westinghouse* fails to support transfer.[12]

### 2.    *The Rent Disputes' limited factual issues are neither novel nor complex*

As discussed above, there is nothing particularly novel or complex about these disputes, and the overlay of COVID-19 does not change this. Generally speaking, rent disputes are neither complex, nor novel. *See, e.g., Reade v. Stoneybrook Realty, LLC*, 63 A.D.3d 433 (1st Dep't 2009) (dispatching similar commercial landlord tenant dispute regarding unpaid rent and application of a lease's *force majeure* clause in a simple, one-page order). This does not change even with unprecedented global events, contrary to Gap's contention. *See, e.g., One World Trade Ctr. LLC v. Cantor Fitzgerald Sec.*, 6 Misc. 3d 382 (Sup. Ct. New York Cty. 2004) (same, but in

---

[12] Indeed, unlike here, *Westinghouse* was incredibly complicated as the uranium shortage was actually the result of an international cartel formed in response to U.S. legislation, which closed off three-quarters of the world market to foreign producers who then met and divided up the rest of the market. Westinghouse sought $6 billion in damages. This spawned novel international litigation, significant foreign discovery, and ultimately Judge Merhige went to London where he became the first federal judge to hold court in a foreign country. *See* Ronald J. Bacigal, *An Empirical Case Study of Informal Alternative Dispute Resolution*, 4 Ohio St J on Disp Resol 1, 4-25 (1988) (detailed history of *Westinghouse*). None of these unique facts exist here.

the context of the tragic events of September 11, 2001); *Trinity Ctr. v. Wall St. Correspondents*, 798 N.Y.S.2d 348, 4 Misc. 3d 1026(A), at *1 (Sup. Ct. New York Cty. 2004) (same); *see also Urban Archaeology Ltd v 207 E. 57th St. LLC*, 68 A.D.3d 562, 562 (1st Dep't 2009) (same, but in the context of the global economic crisis of 2008).

Thus, even if the Panel determined that the Rent Disputes involved a "common factual core," any common factual questions pertaining to whether Gap's decision to cease paying rent at each of the leased premises would remain "relatively straightforward" and thus not sufficiently complex to justify centralization. *See, e.g., In re: Hercules Offshore, Sec. and Derivative Litig.*, 816 F Supp 2d 1377 (J.P.M.L. 2011) (denying centralization because "the facts in these cases are largely undisputed and, therefore, discovery will not be extensive or overly complex.").

### 3. *The procedural history to date demonstrates transfer is unnecessary*

The Panel need not accept Ponte Gadea's representation that the Rent Disputes are straightforward and ripe for summary disposition. Rather, the procedural history of the Rent Disputes, similar Gap rent disputes, and other COVID-19 rent disputes, prove that these disputes are not complex and do not require significant judicial resources or discovery.

As a threshold observation, Gap's proposed MDL purports to include 33 Rent Disputes. However, since filing, ***more than 70%*** have settled, been remanded to state court, or have dispositive motions pending (or poised to be).[13] And, as this dispute is still in its infancy, more quick resolutions are likely to follow, which further cuts against transfer. *See In re JumpSport, Inc. ('845 & '207) Patent Litig.,* 338 F. Supp. 3d 1356, 57-58 (J.P.M.L. 2018) ("[c]entralization is not necessary where the actions are being litigated in a manner that is likely to lead to their

---

[13] Eleven of the Rent Disputes have been (or are poised to be) remanded. *See* MDL Dkt. No. 1-2 (Schedule of Actions, Nos. 1, 2, 3, 4, 5, 6, 9, 10, 11, 12, 17, and 18). And, ten of them have been voluntarily dismissed. *Id.* (Nos. 7, 8, 13, 24, 25, 26, 27, 28, 29, and 33). A chart with the status of the Rent Disputes identified on Gap's Schedule of Actions, as of this filing, is attached as **Exhibit 6** to Graham Decl.

resolution, whether through settlement or other means, within a relatively short period of time."); *In re Live Face on Web, LLC, Copyright Litig.*, 148 F Supp 3d 1373 (J.P.M.L. 2015) (same).

This factor is particular strong because early dispositive motions are pending and have already resulted in settlement. Indeed, while Gap inexplicably includes *Palm Springs* as one of the Rent Disputes, Gap actually settled it on July 24, 2020 – *before filing the Transfer Motion* – and in response to the landlord's motion for judgment on the pleadings.[14] Thus, rather than defend its pleading and claims (which are the same in the other disputes), Gap settled, which is compelling evidence that its defenses lack merit and discovery is unnecessary. Further, *Palm Springs* is not an outlier. Ponte Gadea's pending summary judgment motion also demonstrates that there are no issues of fact to resolve or discovery needed and that entry of final judgment now is proper.[15] And, on August 3, 2020, the landlord in the other case pending in the Southern District of New York requested a conference to discuss its anticipated summary judgment motion.[16] These early dispositive motions confirm that the Rent Disputes are simple and do not need discovery.

This trend is consistent in Gap's state court rent disputes. Already, two New York courts have rendered preliminary rulings, pursuant to New York's unique *Yellowstone* procedures, ordering Gap to pay use and occupancy. Thus, notwithstanding Gap's arguments and COVID-19, these courts have reviewed the leases, applied New York law, and directed Gap to pay millions of dollars of rent pending resolution of the disputes. Copies of these decisions are attached as **Composite Exhibit 7** to the Graham Declaration.[17]

---

[14] *See Palm Springs,* Dkt Nos. 18, 23, 25, 27-30.
[15] *See* Graham Decl., Comp. Ex. 1.
[16] MDL Dkt. 1-2 (*48th Americas LLC v. The Gap, Inc.*, 20-cv-3471 (S.D.N.Y.) (Dkt. No. 22)).
[17] *See Banana Republic, LLC v. RCPI Landmark Props., LLC*, Index No. 653475/2020 (Sup Ct New York Cty Aug. 13, 2020) (ordering Gap to pay $3,877,179.05); *The Gap, Inc., et al. v. 44-*

Finally, in a similar dispute with different parties, one court resolved the entire COVID-19 rent dispute, without discovery, in about 7 weeks. *See In re Hitz Rest. Group*, 616 B.R. 374, 376-77 (Bankr. N.D. Ill. 2020). There, the landlord sought unpaid rent and the tenant argued rent was abated due to, among other things, Illinois' order "address[ing] the Covid-19 pandemic[.]" *Id.* In a 4-page opinion, the court identified that this a legal question of contract interpretation and, there being no ambiguity, resolved the dispute. *Id.* (ordering tenant to pay a portion of rent); *see also id.* (Dkt. Nos. 21, 43, 45, 48). In less than two months, the parties briefed the simple dispute and the court resolved it without the need for any discovery.

Each of these examples in its own right cuts against transfer, but together they are strong evidence against the need for centralization into a multidistrict litigation. The disputes are ripe for quick resolution, and the district courts should be left to do so expeditiously.

### 4. *Legal Issues Predominate Over Factual Issues*

Even if Gap could establish that common and complex facts exist here, resolution of the Rent Disputes is primarily a legal question, not a factual one, which renders centralization unwarranted. Gap admits it failed to pay rent and the most salient other facts are established by the relevant governmental orders implemented in the jurisdiction of each retail location, so the remaining question regarding whether Gap is excused is based on an interpretation of the relevant lease. *See Route 6 Outparcels v. Ruby Tuesday*, 88 A.D.3d 1224, 1225 (3d Dep't 2011) ("[W]hen the parties have themselves defined the contours of force majeure in their agreement, those contours dictate the application, effect, and scope of force majeure.").

Further, Gap does not dispute that the various leases' *force majeure* clauses foresaw the impact of governmental orders and allocated the risk of rent payment in that context. Transfer

---

*45 Broadway Leasing Co., LLC*, Index No. 652549/2020 (Sup Ct New York Cty July 22, 2020) (ordering Gap to pay $2,953,733 and post an undertaking in the amount of $5,842,531.00).

Memo, p. 7-8, n. 10-13. This admission renders the related doctrines of impossibility or frustration of purpose subsumed into and controlled by the terms of the lease. *See, e.g., Sage Realty Corp. v. Jugobanka, D.D.*, No. 95 CIV. 0323 RJW, 1998 WL 702272, at *2 (S.D.N.Y. Oct. 8, 1998) (doctrines of frustration of purpose and impossibility inapplicable if addressed by the lease); *Bank of Am. Nat. Tr. & Sav. Ass'n v. Envases Venezolanos, S.A.*, 740 F. Supp. 260, 263, 266-67 (S.D.N.Y. 1990) (rejecting frustration of purpose argument because agreement foresaw the subject issue).

Likewise, Gap's other claims for money had, unjust enrichment, and rescission are foreclosed as a matter of law. Transfer Memo, p. 10 n. 16. *See IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009) ("Where the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded."); *Julien J. Studley, Inc., v. New York News, Inc., et al.*, 70 N.Y.2d 628, 629 (1987) (rejected money had and received claim because "a contract cannot be implied in fact where there is an express contract covering the subject matter involved"); *Jones v. Evans*, 52 Misc. 3d 1225(A) (N.Y. Sup. Ct. Kings Cty. 2016) ("rescission is only to be invoked where the plaintiff has no adequate remedy at law and where the parties can be substantially restored to their status quo ante positions"); *Culver & Theisen, Inc. v. Starr Realty Company (NE) LLC*, 307 A.D.2d 910, 911 (2d Dep't 1994) (dismissing claim for rescission where lease anticipated events and allocated risk).

Because these questions are legal, solely implicate state law as defined in the specific leases, they are more easily and properly resolved by local district court judges familiar with their state's laws. This is precisely why the Panel typically denies requests to transfer these types of disputes. *See, e.g., Mtge. Indus. Foreclosure Litig.*, 996 F Supp 2d 1379 ("Moreover, these

actions involve relatively straightforward contractual interpretation questions under different state laws. They are not so complex, nor the accompanying discovery so time-consuming, as to merit centralization.") (citation omitted)); *In re: Nat'l Ass'n for Advancement of Multijurisdiction Practice Litig.*, 52 F. Supp. 3d 1377, 1378 (J.P.M.L. 2014) ("Although plaintiffs seek efficiencies through centralized treatment of the disputed legal questions, [m]erely to avoid [different] federal courts having to decide the same issue is, by itself, usually not sufficient to justify Section 1407 centralization.") (citation and internal quotations omitted).

5.     *Transfer is Especially Unsuitable when the Legal Issues are Governed by Different State's laws*

Further, as Gap admits, each lease in this dispute has its own forum selection clause and governing law provision. Transfer Memo, p. 11. In Article 27 of Ponte Gadea's Lease, Gap agreed New York law applied and to "irrevocably consent[] and submit[] to the jurisdiction of any federal … court *sitting* in the State of New York, County of New York."[18] Gap further "irrevocably waive[d] all objections as to venue and any and all rights it may have to seek a change of venue with respect to any such action or proceeding." *Id.*

While forum selection clauses will not themselves bar MDL transfer, this "Submission to Jurisdiction" provision in the Lease highlights the fact that the Rent Disputes are unique to the relationship between the contracting parties, the particular terms of the leases, and the facts concerning Gap's non-payment of rent at these specific premises. Recognizing this, the Panel has denied transferring disputes that revolve around legal questions subject to different governing state law. *See, e.g., In re HealthExtras Ins. Mktg. & Sales Practice Litig.*, 24 F. Supp. 3d 1376, 1376-1377 (J.P.M.L. 2014). Ultimately, this rationale is rooted in common sense. Questions of law are best left to local judges well versed in the law of their states, who regularly deal with the

---

[18] *See* PG Dispute (Dkt. No. 16-1 at Exhibit A §§ 27.1, 27.2) (emphasis added).

interpretation of leases, and who are thus especially equipped to resolve their local disputes.

Here, the overlap of relevant common facts are limited, if any exist, and individual facts predominate over them, while legal issues predominate over the factual ones. Moreover, the multitude of governmental orders and different state laws that apply to the various leases undermine any potential benefit to consolidation. Finally, the (remaining) Rent Disputes proposed for MDL consolidation are simple and straightforward, which is demonstrated by the dispositive motions, remands, and dismissals that have already resolved more than 70% of the cases. Together, these factors strongly militate against centralization.

### B.     Centralization Would Also Be Inconvenient, Inefficient, and Unjust

Assuming Gap can demonstrate common, complex facts exist to qualify this dispute for transfer (which Ponte Gadea disputes), centralization would inconvenience the witnesses and parties with respect to the limited discovery, if any, necessary to resolve the Rent Disputes. Further, because that discovery (if necessary) would be individualized and state-focused, consolidation in one district would be inefficient and unjust. *See In re Cessna Aircraft Distrib. Antitrust Litig.*, 460 F. Supp. 159, 161-62 (J.P.M.L. 1978) ("[A] mere showing that [common] questions exist is not sufficient, in and of itself, to warrant transfer by the Panel."). As transfer will benefit Gap only, to the detriment of everyone else, it is unwarranted.

Gap's entire argument focuses on the purported discovery it anticipates landlords will take from Gap, including the depositions of six unnamed corporate officers and other discovery purportedly implicating some ninety odd other individuals. (Transfer Memo, p. 15). But, contrary to Gap's claim,[19] Ponte Gadea has no need to depose several high-level Gap officials

---

[19] In Fact, Gap's Rule 26 Initial Disclosures in the PG Dispute neither identifies six unnamed corporate officer nor identifies *any* alleged witness located in San Francisco, CA.  Rather, they are all in New York City.  A copy of Gap's Rule 26 Initial Disclosures, dated August 27, 2020, is attached as **Exhibit 8** to the Graham Declaration.

about Gap's decision to cease paying rent. Neither do other landlords as the dispositive motions demonstrate. It is an admitted fact that Gap stopped paying rent. No discovery is required,[20] and Gap's supposition to the contrary falls flat in the face of this record.

And, with respect to the few potential fact issues, those will be focused on the specific dispute, lease, and retail location. Forcing the parties and witnesses to coordinate these localized issues and discovery through a far-away centralized court is on its face inconvenient. This inconvenience to Ponte Gadea (and presumably other landlords) is further exacerbated by the fact that it is only party to one dispute in New York City, which is where all of the witnesses identified by Ponte Gadea are located.[21] Dragging individual defendants (and their witnesses) into a MDL with different landlords, different leases, and different local facts is especially inefficient and unjust. *See, e.g., In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 273 F. Supp. 3d 1360, 1362 (J.P.M.L. 2017) (denying transfer because, among other reasons, the number of unique defendants named in the various disputes and finding "[c]entralization thus appears unlikely to serve the convenience of most, if not all, defendants and their witnesses.").

Next, centralization would also be inefficient and unjust. Gap's worry about thousands of potential "tag along" cases is belied by the record and the *decrease* in their numbers by more than 70% in the past few weeks. This is *fact*. Gap's supposition regarding additional litigation and conflicting *Daubert* motions is *speculation*. Conversely, if Gap's machinations prove successful, it will delay the landlords' ability to obtain quick relief of these disputes, which are

---

[20] Even if there is necessary, Gap-focused discovery, Gap is represented by one law firm (who is coordinating with local counsel), which is sophisticated and well-versed in federal practice. Gap's counsel, with coordination with landlords' counsel has an alternative means to minimize duplication of whatever limited discovery may be necessary. *In re: Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012) (centralization "should be the last solution after considered review of all other options.") (citation omitted); *Eli Lilly & Co.*, 446 F. Supp. at 243-44 (coordination of discovery suitable alternative to transfer).
[21] *See* n. 7, *infra*.

moving towards resolution. Gap has not paid landlords rent since March 2020. To force them into a far-flung district court to wait even longer to adjudicate their local rent disputes is unjust and inefficient.

Lastly, transfer would condone forum-shopping gamesmanship. *See Concrete Pipe*, 302 F. Supp. at 254-55 (considering whether transfer would serve any party's ulterior motive of forum-shopping). The Rent Disputes are in federal court based solely on diversity subject matter jurisdiction, which, based on their various leases, requires the application of specific state law. No Rent Dispute is pending in California, nor could one be but for limited circumstances.  Yet, Gap attempts to avoid this reality – and that ***all*** of the leases have varying forum-selection and governing law provisions – and force the landlords to litigate in Gap's (and its counsel's) home district.  Further, Gap seeks *uniform* (and presumably more favorable) rulings in its home district, which further underscores Gap's motivation for transfer.  Indeed, regardless of the alleged "hornbook" issues that purportedly exist here, each state's laws control, as there is no "uniform" law nor could there be.  Gap's efforts raise obvious *Erie* concerns. *Erie Railroad v. Tompkins*, 304 U.S. 64, 78 (1938) ("There is no federal general common law"); *Van Dusen v. Barrack*, 376 U.S. 612 (1964); *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 112 (2d Cir. 2012). In short, Gap's apparent ulterior motive to drag the landlords – in contravention of all of the leases' forum-selection clauses – to Gap's home turf contravenes 28 U.S.C. § 1407's objective of justice.[22]

---

[22] Indeed, in light of these news reports, whether Gap seeks efficient and just resolution of the Rent Disputes is dubious at best. *See* https://www.sfchronicle.com/business/amp/Gap-s-future-lies-with-Bankruptcy-Court-7943518.php; https://www.natlawreview.com/article/20-retailers-to-watch-bankruptcy-filing-second-half-2020.

**C.      Transfer to the N. D. of California Undermines the Goals of 28 U.S.C. § 1407**

As discussed above, only Gap benefits from a transfer to the Northern District of California. Even then, the benefit is superficial because there is no need for discovery from Gap (or very limited) and it will be focused on its retail stores, not its corporate decision, which Gap has repeatedly admitted as being the basis to cease paying rent. Further, there are no actions currently pending in the Northern District of California. As these are simple, straightforward disputes, there is no legitimate reason to transfer them all to San Francisco.

Moreover, and only to the extent the Panel decides to transfer the Rent Disputes, including the Ponte Gadea Dispute (which is even more factually disparate than the others), a more sensible location is New York City, either the Southern or Eastern District. New York City presently has four disputes pending, is where COVID-19 had arguably the greatest national impact, has districts courts well-versed in significant commercial real estate disputes (including rent disputes), and uniquely has a history of evaluating significant force majeure events, such as the tragic events of September 11, 2011. Further, two dispositive motions are pending (or poised to be) in these districts and thus they will be most familiar with the legal and factual details of the cases, with whether early resolution is proper (as Ponte Gadea contends) or if some (very) limited discovery is necessary. Even then, these districts courts will be familiar with what limited discovery is necessary and can tailor a discovery plan that will efficiently and expediently move these Rent Disputes towards resolution.

**V.      CONCLUSION**

For the foregoing reasons, the Panel should deny Gap's Transfer Motion and award Ponte Gadea its fees and costs incurred in responding to this Transfer Motion, as provided in Section 23.3 and 24.1 of the Lease.

Dated: New York, New York
August 28, 2020

**AKERMAN LLP**

By: */s/  Darryl  R.  Graham*
   Darryl R. Graham
   Darryl.Graham@akerman.com
   Kathleen M. Prystowsky
   Kathleen.Prystowsky@akerman.com
520 Madison Avenue, 20th Floor
New York, New York 10022
Tel: (212) 880-3800
Fax: (212) 259-7181

*Attorneys for Defendant*
*Ponte Gadea New York LLC*